Filed 12/26/25 Conservatorship of James E. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Conservatorship of the Person and Estate of JAMES E. | B344431 |
| LOS ANGELES COUNTY OFFICE OF THE PUBLIC GUARDIAN,<br><br>        Petitioner and Respondent,<br><br>        v.<br><br>JAMES E.,<br><br>        Objector and Appellant. | (Los Angeles County Super. Ct. No. 24NWMH00660) |

APPEAL from an order of the Superior Court of Los Angeles County. Robert S. Harrison and Scott R. Herin, Judges. Reversed.

Christian C. Buckley, under appointment by the Court of Appeal, for Objector and Appellant.

No appearance for Petitioner and Respondent.

\* \* \* \* \* \* \* \* \* \*

The sole issue presented by this appeal is the validity of a jury trial waiver on a conservatorship petition under the Lanterman-Petris-Short Act (LPS) (Welf. & Inst. Code, § 5000, et seq.). At the court trial on the petition that followed James E.'s waiver, the trial court found James to be gravely disabled within the meaning of the LPS, granted the petition, and appointed the Los Angeles County Office of the Public Guardian (Public Guardian) as conservator. On appeal from the judgment of conservatorship, James contends reversal is required because the trial court failed to properly advise him of his right to a jury trial and to obtain a knowing and voluntary waiver. We conclude the record does not affirmatively demonstrate that James made a knowing and voluntary waiver of his right to a jury trial. We therefore reverse the order granting the petition for conservatorship.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2024, James was charged with assault with a deadly weapon (not a firearm) and found incompetent to stand trial. A referral was made to the Public Guardian for investigation of whether a conservatorship under the LPS was warranted. James had several documented "episodes of mental health encounters," but no prior criminal record or prior conservatorship proceedings.

At the hearing on December 23, 2024 under Welfare and Institutions Code section 5350, subdivision (d)(1) before Judge Robert S. Harrison, James was present with appointed counsel. Counsel advised the court she spoke with James that morning about the conservatorship proceedings, and James was "very clear that he does not want a conservatorship, so I would like to set this for court trial/jury trial setting."

2

The court told James his demand for trial would be entered. The court then advised James, "you have a right to a court trial that's with just a bench officer or a jury trial with 12 people in the courtroom. Do you want to have a jury trial or a court trial?" James responded, "court trial." The court accepted James's jury trial waiver as "knowing and voluntary" and set February 3, 2025 as the date for the court trial on the petition.

On February 3, 2025, the court trial on the petition proceeded before Judge Scott R. Herin. James was present and represented by appointed counsel. After hearing testimony from the expert psychiatrist and James, the court found James to be gravely disabled within the meaning of the LPS, granted the petition, and appointed the Public Guardian as conservator for one year.

This appeal followed.

## DISCUSSION

A proposed conservatee under the LPS has a statutory right to a jury trial on the petition. By statute, the trial court was required to personally inform James of his jury trial right. (Welf. & Inst. Code, § 5350, subd. (d)(1); Prob. Code, § 1828, subd. (a)(6).) At the December 23, 2024 hearing, the trial court here technically complied with this statutory mandate. However, the perfunctory advisement and skeletal oral colloquy do not support a finding James made a knowing and voluntary waiver of the jury trial right.

In *Conservatorship of John L.* (2010) 48 Cal.4th 131, the Supreme Court explained that LPS proceedings are civil in nature and that "the laws of civil procedure apply." (*Id.* at p. 147.) *John L.* concluded any " 'analogy between criminal proceedings and proceedings under the LPS Act is imperfect at

best and . . . not all of the safeguards required in the former are appropriate in the latter.' " (*Id*. at p. 151.)  Nevertheless, *John L.* acknowledged the private interests at stake in an LPS proceeding are "weighty and deserving of protection." (*Ibid*.)

Because of the significant liberty interests involved in civil commitment proceedings, case law governing criminal proceedings offers guidance. (See, e.g., *Conservatorship of Joanne R*. (2021) 72 Cal.App.5th 1009, 1017–1018 [applying criminal law standard for assessing jury trial waiver in LPS proceeding].)  James urges us to apply the criminal law standard for assessing waiver here.  We shall do so.

We uphold the validity of a jury waiver by an accused in a criminal proceeding " ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' " (*People v. Daniels* (2017) 3 Cal.5th 961, 991.)  Supreme Court precedent has uniformly rejected requiring that any specific language or talismanic phrases be used in obtaining a waiver. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 167.)  Nevertheless, the Supreme Court has emphasized "the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." (*Id*. at p. 169.)

The trial court here was not required to detail all attributes of a jury trial as compared to a bench trial in order to obtain a valid waiver.  But, the court's one sentence query was not only incomplete but confusing.  The court asked James only whether he wanted a court trial with a "bench officer or a jury trial with 12 people in the courtroom."  The court made no effort to clarify the inapt description of a jury as "12 people in the courtroom."  Nor did the court identify any essential aspect of a jury trial such as the jury, as opposed to the judge, being responsible for

4

deciding the ultimate question of whether James was gravely disabled.

In addition, the record indicates James had not been involved in prior conservatorships or criminal court proceedings, so we may not presume James had prior knowledge as to what a jury trial or court trial entails from past personal experiences.

The only other evidence in the record is the brief statement by James's counsel that she had spoken with James that morning, that he had stated his desire to oppose the conservatorship, and they were making a demand for a trial setting. We presume the competence of counsel in the absence of evidence to the contrary. (*John L.*, *supra*, 48 Cal.4th at p. 156.) However, this simple request for a trial setting, unsupported by any other evidence in the record, is insufficient for us to presume that counsel and James had the time to fully discuss the difference between jury trials and court trials to make up for the dearth of information provided by the court's advisement. Moreover, the trial court did not ask whether James spoke to his counsel about his right to a jury trial.

We could not find any published authority finding a valid waiver of a jury trial in an LPS proceeding on similar facts. But, the facts here are similar to *People v. Blancett* (2017) 15 Cal.App.5th 1200, which involved a jury waiver in a mentally disordered offender (MDO) proceeding. There, the defendant's appointed counsel requested the matter be set for a court trial. (*Id*. at p. 1203.) The court asked the defendant if, as his counsel had requested, he was "okay with having a judge decide your case and not a jury" to which the defendant responded "Yes." (*Ibid*.) *Blancett* reversed, explaining that "[i]n view of the trial court's stark colloquy, the lack of evidence that Blancett discussed his

5

jury trial right and waiver with counsel, Blancett's inexperience with the criminal justice system, and Blancett's lack of familiarity with MDO proceedings, we conclude that his waiver was not knowing and intelligent." (*Id.* at pp. 1206–1207.)

The same is true here. The record does not affirmatively demonstrate James's waiver of the right to a jury trial on the petition was knowing and voluntary. We therefore reverse.

## DISPOSITION

The order granting the petition for conservatorship is reversed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.